IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY BRUCE, | ) | CASE NO. 3:16 CV 1329 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Ashley S. Bruce, for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders the parties have

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated June 2, 2016.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

[6] ECF # 10.

briefed their positions.[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

A.     **Background facts and decision of the Administrative Law Judge ("ALJ")**

Bruce who was 25 years old at the time of the administrative hearing,[11] graduated high school at age twenty with special education courses and an IEP.[12] She is single and lives with her mother and aunt[13] and has no past relevant work experience.[14]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Bruce had severe impairments consisting of degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease (COPD); allergies; morbid obesity; cytomegalovirus (CMV); attention deficit hyperactivity disorder (ADHD); and borderline intellectual functioning.[15] The ALJ made the following finding regarding Bruce's residual functional capacity:

---

[7] ECF # 13 (Bruce's brief), ECF #17(Commissioner's brief).

[8] ECF # 17-1(Commissioner's charts); ECF # 14 at 3 (Bruce's charts).

[9] ECF # 14 at 1.

[10] ECF # 19.

[11] ECF #14 at 1.

[12] *Id*.

[13] ECF # 9, Transcript ("Tr.") at 179.

[14] *Id*. at 166.

[15] *Id*. at 159.

> The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant cannot climb ladders, ropes, or scaffolds; occasionally crawl; can have only occasional exposure to extreme cold; no exposure to irritants such as fumes, odors, dust, and gases, except incidental; no outdoor work; and no work with latex (as in medical work). Mentally, the claimant is able to perform goal-based production/work measured by end result, not pace work; work limited to simple, routine, and repetitive tasks; work allowed off-task five percent of the day; and work in low stress job defined as only occasional changes in the work setting.[16]

Bruce has no past relevant work history.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Bruce could perform.[17] The ALJ, therefore, found Bruce not under a disability.[18]

**B.     Issues on judicial review**

Bruce asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically Bruce presents the following issues for judicial review:

- Whether the ALJ erred by failing to find Ms. Bruce met or equaled the mental requirements in Listing 12.05(c). 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.05 (c).

- Whether the ALJ erred by failing to discuss or evaluate all of the severe impairments including recurrent dermatitis and cellulitis, and temporomandibular joint syndrome (TMJ).

---

[16] *Id.* at 162.

[17] *Id*. at 167.

[18] *Id*. at 168.

- Whether the residual functional capacity (RFC) is supported by substantial evidence.[19]

The Court recommends that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, should be reversed and remanded for further administrative proceedings.

## Analysis

### A.  Standard of review-substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

---

[19] ECF # 13 at 3.

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-4-

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.    Application of standards**

This case involves issues at multiple steps of the sequential analysis, as well as an issue concerning the RFC.  For the reasons that follow, I will recommend finding that substantial evidence does not support the Commissioner's findings at Steps Two, Three and Four.

*1.    Step Two*

At Step Two the ALJ concluded that Bruce's "recurrent dermatitis and cellulitis, hypoglycemia, temporomandibular joint syndrom (TMJ), gastroesophageal reflux disease (GERD), and polycystic ovary syndrome (PCOS) [were] non-severe impairments."[23] In support of the determination, the ALJ noted that the recurrent dermatitis and cellulitis have

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] Tr. at 159.

been "successfully treated with medications as needed."[24] Further, he found that the TMJ had been treated with joint injections, "with improvement of her pain."[25] Similarly, as to both the GERD and PCOS, the ALJ found that these conditions were "successfully treated with medication" (GERD) or "controlled with medication" (PCOS).[26] Thus, the ALJ concluded that because these conditions had been controlled or improved by treatment, the impairments did not restrict Bruce's ability to perform basic work-related activities and so were non-severe.[27]

Essentially, while Bruce concedes that her treatments produced some periods of improvement, she argues that the ALJ overstated the limited, temporary episodes of improvement while also ignoring medical opinion evidence that stated that these conditions were severe impairments.[28]

In that regard, both state agency reviewing physicians who gave opinions as to Bruce's physical limitations stated that Bruce's dermatitis was a severe impairment.[29] The

---

[24] *Id.* (citing record).

[25] *Id.* (citing record).

[26] *Id.* (citing record).

[27] *Id.*

[28] ECF # 13 at 15-16.

[29] Tr. at 234 (Dr. John Mormol, M.D.); at 249-50 (Dr. Leslie Green, M.D.).

ALJ gave "significant weight" to these reports, noting that "they are consistent with the medical evidence of record ...."[30]

Moreover, as Bruce observes, the medical treatment records - which are not discussed in any significant detail by the ALJ - document a lengthy history of her dermatitis. Beginning in early 2009 Bruce began seeing Dr. Nathaniel Ratnasamsy, M.D. for her "recurrent active skin lesions,"[31] and for nearly five years of treatment with Dr. Nazia Sidiq, M.D., her family physician, this condition was repeatedly described as "recurrent,"[32] "continuing,"[33] "non-healing,"[34] "persistent," [35] and - despite treatment - "worsening."[36] Indeed, a fair reading of the treatment notes shows that the treating doctors, in consultation with outside experts, "had no answer"[37] for what was causing this "toxic dermatitis."[38]

Just as important, every brief episode of partial improvement was almost immediately accompanied by a notation that, despite any improvement, the underlying condition remained

---

[30] *Id*. at 165.

[31] *Id*. at 409, 410-11, 425.

[32] *See, e.g., id.* at 473, 475.

[33] *Id*. at 471.

[34] *Id*. at 565-67.

[35] *Id*. at 466-67.

[36] *Id*. at 464-65.

[37] *Id*. at 466-67.

[38] *Id*. at 472.

"continuous."[39] Further, the noted improvement was followed in short order by a treatment note that the skin lesions were "worsening in nature,"[40] thus showing a consistent view of this impairment as a persistent one by Bruce's treating physicians, and one resistant to meaningful remedies.

Bruce claims that the ALJ's selection of the rare citations to some improvement in her dermatitis while ignoring the frequent and consistent observations of its persistence constitute impermissible cherry-picking of the evidence.[41] As I recently stated in *Damron v. Commissioner of Social Security,*[42] an ALJ "may not distort the evidence by 'cherry-picking only a few selective portions of it while ignoring its true overall nature."[43] In particular, the ALJ may not focus solely on periods of improvement while failing to discuss the trajectory of the illness, its nature and the responses to any medications, and the frequency of any recurrences or flare-ups.[44]

Similarly, the ALJ's conclusion at Step Two that Bruce's TMJ condition was not a sever impairment is also tainted by significant mis-characterization of the evidence. In that

---

[39] *Id*. at 682 (January 2015).

[40] *Id*. at 148, 151 (April 2015).

[41] ECF # 13 at 16-17.

[42] *Damron v. Commissioner of Social Security,* No. 3:16 CV 322, 2017 WL 395782 (N.D. Ohio Jan. 30, 2017).

[43] *Id*. at *7 (citation omitted).

[44] *Gentry v. Comm'r of Soc. Sec.,* 741 F.3d 708, 723-24 (6th Cir. 2014)(citations omitted).

-8-

regard, the ALJ stated that Bruce has "intermittent jaw pain" for which she received injections that "improved her pain."[45]

But, the record shows that Bruce's TMJ pain remained substantially unresolved for years, despite frequent and unsuccessful attempts to treat the pain with multiple medications.[46] The injection, which was cited by the ALJ, was not successful the first time it was given and provided only two weeks of relief the second time.[47] In fact, the objective medical evidence shows physical reasons for the TMJ - joint space narrowing, chronic internal derangement, limited range of motion in the jaw with difficulty in opening and closing the mouth, and notable popping, pain and tenderness to the touch, as well as lower jaw protrusion.[48] The record further shows that the TMJ was only relieved by properly fitted dentures that correct Bruce's jaw position, but that she has been unable to find dentures to which she is not allergic.[49]

Thus, as with the dermatitis, I recommend finding that the ALJ's determination that Bruce's TMJ condition was not a severe impairment because of a single, non-recurring, temporary improvement from an injection, while ignoring a wealth of detailed and consistent medical evidence to the contrary, is a finding not supported by substantial evidence.

---

[45] Tr. at 159.

[46] *Id.* at 480, 481, 497-89, 568, 584, 587-88.

[47] *Id.* at 568, 571, 587-88.

[48] *Id.* at 413-14, 481, 482, 491, 493-94, 497-98, 501, 568, 571, 574, 582, 584.

[49] *Id.* at 185, 469-70, 480, 483, 534-36, 538-41, 554, 612-14, 617, 623.

*2.  Step Three*

This distortion of the evidence concerning Bruce's dermatitis in the perfunctory analysis at Step Two improperly precluded ALJ from analyzing at Step Three whether the dermatitis met or equaled Listing 8.05.[50]

That Listing provides:

> The Appendix lists the following as a disability: "[d]ermatitis (for example, psoriasis, ...), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § 404, subpt. P, app. 1, § 8.05. "[E]xtensive skin lesions" are defined as:
>
>> those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>>
>> a. Skin lesions *that interfere with the motion of your joints* and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>>
>> b. Skin lesions *on the palms of both hands* that very seriously limit your ability to do fine and gross motor movements.
>>
>> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.
>
> 20 C.F.R. § 404, subpt. P, app. 1, § 8.00(C)(1) (emphasis added). [51]

---

[50] *See, Gentry*, 741 F.3d at 724.

[51] *Id*. at 725.

-10-

As noted above, the evidence is that Bruce has had recurring or persistent lesions on multiple parts of her body for extensive periods of time longer than three moths, despite attempts to treat this condition. As such, there is significant evidence that Bruce may have met this listing. But, the ALJ's failure to properly take note of this evidence, and then evaluate it in light of the appropriate listing, deprives the reviewing court of the basis for meaningful review of the finding at Step Three that substantial evidence supports that no impairment or combination of impairments meets or equals a listed impairment.

3.  *Step Four - the RFC*

As a result of the ALJ's failures described above, a reviewing court cannot assess whether substantial evidence supports the RFC finding at Step Four. In particular, neither the VE nor the ALJ considered what effect severe and recurrent TMJ and dermatitis pain would have on the Bruce's employability, or whether jobs would be available for persons making frequent doctor visits (Bruce averaged at least two appointments per month over the period 2012 to 2015)[52] and restricted by painful, persistent skin lesions.

## Conclusion

For the reasons stated, I recommend finding that the decision of the Commissioner here is not supported by substantial evidence and so should be reversed, with the matter remanded for further proceedings consistent with this opinion.

---

[52] *See*, ECF # 13 at 19-20 (citing visits).

Dated: June 27, 2017　　　　　　　　　　　　　s/ William H. Baughman, Jr.
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[53]

---

[53] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).